Filed 3/28/14  Singh v. Brar CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JASBINDER SINGH et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>RAJINDER S. BRAR et al.,<br><br>Defendants and Respondents. | F065614<br><br>(Super. Ct. No. 10CECG04290)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Alan M. Simpson, Judge.

Law Offices of Randolf Krbechek and Randolf Krbechek for Plaintiffs and Appellants.

Michael J.F. Smith, John L. Migliazzo and Anja M. Smith for Defendants and Respondents Sterling Swartout and Swartout, Inc.

Hager, Macy & Jensen and Paul R. Hager for Defendant and Respondent Rajinder S. Brar.

-ooOoo-

This is an appeal from a judgment of the Superior Court of Fresno County entered in favor of respondents Rajinder Brar, Swartout, Inc., and Sterling Swartout (Swartout). On September 13, 2010, Brar, a commercial tenant, defaulted in his rent payment. On September 28, 2010, appellants Jasbinder Singh and Harbinder Kaur, the commercial landlords, served a three-day notice to pay rent or quit the premises. Brar did neither. On October 8, 2010, Singh and Kaur filed a complaint for unlawful detainer.[1] According to Brar, on November 2, 2010, he and Singh orally agreed to a month-to-month tenancy at reduced rent.

On December 14, 2010, Singh and Kaur sued Brar, Swartout, Inc., Swartout, and Fred Howard for breach of contract. They alleged that Swartout, Inc. was liable as the original lessee and Swartout and Howard were liable as Brar's guarantors. Trial commenced on October 12, 2011.[2] In a statement of decision and findings of facts filed May 1, 2012, the superior court ruled, inter alia, that appellants terminated the commercial lease, orally agreed to a month-to-month tenancy, and overcharged Brar, resulting in a credit offsetting any overdue rent, and respondents did not owe anything under the terminated lease. Judgment was entered on May 18, 2012.[3] Singh and Kaur filed a notice of appeal on August 10, 2012.

Appellants make the following contentions: (1) they did not terminate the commercial lease by serving the three-day notice and filing a complaint for unlawful detainer; (2) they did not terminate or otherwise modify the lease by orally agreeing to accept reduced rent; (3) objective evidence demonstrates that Brar still owes damages; (4) Swartout, Inc. remains liable as the original lessee; (5) Swartout remains liable as

---

[1] The unlawful detainer action was dismissed without prejudice on January 25, 2011.

[2] Prior to trial, appellants voluntarily dismissed their cause of action as to Howard.

[3] The court denied appellants' motions to vacate the judgment and for a new trial.

2.

Brar's guarantor; and (6) they did not exonerate Swartout's guaranty by agreeing to accept reduced rent.[4]

We conclude that appellants terminated the lease. Moreover, whatever Brar may have owed under the lease was negated by the overcharge. We therefore affirm the judgment.

## FACTUAL HISTORY

On April 27, 1994, DMP Development Corporation (DMP) and Swartout, Inc. signed and executed an agreement to build and lease (1994 Lease). DMP agreed to construct a gas station, convenience store, and car wash on property located on the southeast corner of Tozer Street and Yosemite Avenue in Madera, California, and leased

---

[4] Respondents filed a motion to dismiss the appeal on the basis that appellants relied on the superior court's judgment to recover possession of the property in a subsequent unlawful detainer action. (See *Lee v. Brown* (1976) 18 Cal.3d 110, 114 ["[O]ne who accepts the *benefits* of a judgment cannot thereafter attack the judgment by appeal."].) In the alternative, respondents asserted judicial estoppel. (See *Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 448-449 [judicial estoppel precludes party from obtaining an advantage by asserting one position and then seeking a second advantage by asserting an incompatible position].)

We deny the motion on both grounds. First, "[i]t is only in cases where an appellant is shown to have received and accepted advantages from a judgment to which such appellant would not be entitled in the event of a reversal of the judgment that [his or] her acceptance thereof has been held to operate to defeat the appeal." (*Browning v. Browning* (1929) 208 Cal. 518, 525.) Here, in the event of a reversal, appellants would still be entitled to possession of the property because Brar defaulted in his rent payment under the commercial lease. (See *Saberi v. Bakhtiari* (1985) 169 Cal.App.3d 509, 514, citing Code Civ. Proc., § 1161, subds. 1 & 2 [a tenant is guilty of unlawful detainer when he or she continues in possession of the property after the expiration of a term or termination of a periodic tenancy by notice *or* after default in the payment of rent, inter alia].) Second, given that judicial estoppel is an "extraordinary" and "'discretionary'" remedy that must be "'applied with caution and limited to egregious circumstances'" (*Minish v. Hanuman Fellowship*, *supra*, 214 Cal.App.4th at p. 449), we find the doctrine inapplicable.

the premises to Swartout, Inc. for a 25-year term. The 1994 Lease stated, in pertinent part:

"**13. Default.** In the event Lessee shall fail to pay the rent when due or shall fail to perform any of its other obligations under this Lease (after notice of such default or breach shall have been given as hereinbelow provided), Lessor may, a[s] its sole and exclusive remedy, elect either:

"(i) to re-enter said premises by summary proceedings or otherwise and re-let the premises, using its best efforts therefore, and receiving the rent therefrom, applying the same first to the payment of rent accruing hereunder, the balance, if any, to be paid to Lessee; but, Lessee shall remain liable for the equivalent of the amount of all rent reserved herein less the receipts of re-letting, if any, and such amount shall be due and payable to Lessor as damages or rent, as the case may be, on the successive rent days hereinabove provided, and Lessor may recover such amounts periodically on such successive days; or,

"(ii) to terminate this Lease and to resume possession of the premises wholly discharged from this Lease.

"Such election shall be made by written notice to Lessee at any time on or before the doing of any act or the commencement of any proceedings to recover possession of the premises by reason of the default or breach then existing and shall be final. If Lessor shall elect to terminate this Lease, all rights and obligations whatsoever of Lessee and of [his] successors and assigns, so far as the same may relate to the unexpired portion of the term hereof, shall cease and within ten (10) days after receipt by Lessee of notice of election by Lessor to terminate this Lease, the parties shall, by an instrument in writing form for recording, cancel this Lease and the unexpired portion of the term thereof, and Lessee shall surrender and deliver up to Lessor the entire premises, together with all improvements and additions except trade fixtures and other personal property, and upon any default by Lessee in so doing, Lessor shall have the right forthwith to re-enter the demised premises either by summary proceedings or otherwise. [¶] … [¶]

"**18. Assignment or Transfer by Lessor or Lessee.** … [¶] With the consent of Landlord, Lessee shall have the right to assign, sublet or transfer any or all of its rights and privileges under this Lease, provided however, that no such assignment, subletting or transfer shall operate to relieve Lessee of its obligations for the performance of all of the terms and conditions of this Lease, including the payment of the rent. [¶] … [¶]

4.

"**20. Miscellaneous.** [¶] … [¶] (h) No modification, alteration or amendment of this Lease shall be binding unless in writing and executed by the parties hereto, their heirs, successors or assigns."

Swartout, Inc. assigned its interest in the 1994 Lease to H&S Services (H&S), a general partnership owned by Howard and Swartout. DMP approved the assignment on the condition that "the continuity of [the] principals responsible under said Lease" remained intact. Sometime after the gas station, convenience store, and car wash were built, DMP transferred ownership to Yosemite Pointe Partners. Yosemite Pointe Partners then sold the property to appellants in 2000.

In 2001, H&S assigned its interest in the 1994 Lease to Gurdip Dhillon and Tarlochan Jagpal. Appellants approved the assignment on the condition that Swartout and Howard "personally and corporately guarantee … all sums due and owing as a result of any default of the Assignee including all rents, common area expense, costs of collection, attorneys fees, late charges, interest, or any other expense attributable to such default by sublessee." In June 2006, Dhillon and Japgal assigned their interest to Brar.[5]

On July 16, 2008, appellants and Brar signed and executed an addendum to the 1994 Lease (2008 Addendum). Brar was identified as "the successor to Gurdip S. Dhillon and Tarlochan Jagpal" and "the current tenant under the [1994] Lease," "assumed all rights, title, interest and obligations in and to the [1994] Lease," and "agree[d] to perform all of the terms, covenants, conditions and obligations of such Lease, including making all of the rent payments." (Unnecessary capitalization omitted.) The "terms and conditions" of the 2008 Addendum were "hereby incorporated in and made a part of" the 1994 Lease.

---

[5]     On March 23, 2007, Howard signed another agreement to "personally and corporately guarantee to [appellants] all sums due and owing as a result of any default of the Assignee, including all rents, common area expense, costs of collection, attorneys fees, late charges, interest, or any other expense attributable to such default by sublessee." Swartout testified that he signed a separate, identical agreement and gave it to Brar. Singh testified that he received Swartout's agreement, but lost it.

By September 2010, the monthly base rent amounted to $14,386.50, excluding taxes, utilities, and other charges. On September 13, 2010, Brar paid $10,000. On September 28, 2010, appellants served a three-day notice to pay the balance or quit the premises:

> "[$6,502.41] is the estimated amount that is due and owing under the lease. **YOU ARE HEREBY REQUIRED** to pay in full the estimated sum of $6,502.41 within three (3) days or to remove from and deliver up possession of the above described premises. If you fail to do so, legal proceedings will be commenced against you to recover possession of the property, declare the forfeiture of the lease or rental agreement under which you occupy said premises, and to recover rents, punitive damages, court costs, and attorney's fees, according to the terms of your lease or rental agreement. [¶] … [¶]

> "**YOU ARE FURTHER NOTIFIED** that if you fail to pay the estimated amount demanded by this Notice, Landlord will elect to declare the forfeiture of the written Addendum dated July 16, 2008 and your interests in the property ….

> "**LANDLORD DOES NOT SEEK FORFEITURE OF THE 'AGREEMENT TO BUILD AND LEASE' DATED APRIL 27, 1994. LANDLORD ONLY SEEKS FORFEITURE OF THE WRITTEN ADDENDUM DATED JULY 16, 2008.**

> "Notwithstanding anything to the contrary contained herein, this Notice shall not constitute a waiver of any rights which your Landlord has as to the collection of rents and damages which would otherwise be owing from you under the terms of your agreement through the end of the agreement term. The term of the lease agreement is for 25 years.…"

Brar neither paid the balance nor vacated the property. On October 8, 2010, appellants filed a complaint for unlawful detainer and also sought, inter alia, $6,502 in overdue rent and other charges, forfeiture of the 2008 Addendum, and fair rental value of $479 per day for each day Brar remained in possession since October 1, 2010. Brar subsequently paid $10,000 on October 14, 2010.

Appellants filed a lawsuit for breach of contract on December 14, 2010, and trial commenced on October 12, 2011. Brar testified that he attempted to renegotiate the rent

with Singh as far back as June 2010, but to no avail.  Later, on November 2, 2010, Brar and his representative met with Singh and his representative to settle the unlawful detainer action.  Brar detailed:

> "[W]e had shown and submitted all the—most of the paperwork, you know, Excel profit and loss sheets stating how much money we had lost. [¶] … [¶]  And we discussed, you know, what we had presented.  We had discussed … what we were willing to pay.  And [appellant Singh] also made it very clear that he did not want the station back and that he wanted the station to stay open because … we had offered the keys back to him. [¶]  And then the question about Valero lease and Valero contracts came up … and we said we'll subsequently, you know, transfer everything back to you.  And then we discussed those.  [¶]  And [appellant Singh] says, 'All right.  Pay me $10,000 a month' lease—I mean, not lease.  'Pay me $10,000 a month rent.  Please keep the station open, and we will, you know, find a solution to it.'  And—and—and the term was on a month-to-month basis.  [¶]  So, basically, that's what was agreed by us."

Brar also testified that, prior to the creation of the month-to-month tenancy, appellants overcharged him.  Dr. Sean Alley, an economics professor and appellants' witness, testified that he reviewed the invoices since June 2006 and calculated a substantial overcharge of $24,751.83 for common area maintenance, accounting, property taxes, property management, and attorney fees.[6]

On October 19, 2011, the superior court announced tentative findings:

> "It appears to me that from the point of November 2, 2010, to the present, the relationship between [respondent] Brar and [appellants] is a month-to-month tenancy.  It appears that there was an oral modification. You can look at it a number of ways.  The obligation to continue the lease, that the rent amount stated—the greater amount stated terminated on November the 2nd of 2010.

> "Once [respondent] Brar said, 'I can't pay it.  I'm not going to pay it. Here are the keys,' from that point on, there are various ways that one can look at the reason why his obligation became one to pay $10,000 a month. But regardless of which direction you go with that analysis, that's the

---

**6**    Appellants do not dispute the fact or the amount of the overcharge.

conclusion that one comes to. Up to that point, his obligation would be to pay the monthly rent amount.

"So to the extent that he [p]aid $10,000 for a couple of months, one month or two months before November 2nd, 2010, he would actually owe the difference between the correct amount of rent and the $10,000 that he paid for those couple of months. But after November 2nd of 2010, it's $10,000 a month."

On May 1, 2012, the superior court issued the following statement of decision and findings of facts:

"1.    The Court finds [appellants] Jasbinder Singh and Harbinder Kaur were owners and lessors of the subject real property and buildings which were leased to [respondent] Rajinder Brar in June of 2006, formalized in writing July 16, 2008 …, as an addendum to the 1994 lease.

"2.    The Court finds that although [appellants] allege [respondent] Swartout guaranteed [respondent] Brar's performance as le[s]see, said guaranty was never delivered to or relied upon by [appellants].

"3.    The Court finds that under the [1994 lease's default clause, appellants] terminated the lease by serving a written request for forfeiture on September 28, 2010 … and filing an unlawful detainer action October 8, 2010 … whereby [appellants] verified [respondent] Brar owed $6,502.41.

"4.    The Court finds that under the [1994 lease's default clause,] all rights and obligations of lessee relating to the unexpired portion ceased on 9/28/10.

"5.    The Court finds, based on [appellant] Singh's and [respondent] Brar's testimony that [respondent] Brar thereupon offered [appellant] possession and that on November 2, 2010 both agreed that [respondent] Brar would stay in possession and pay $10,000.00 per month rent for an unlimited time[,] thus creating a month-to-month tenancy.

"6.    The Court finds that [respondent] Brar has paid the orally agreed monthly rent fully since termination of the written lease.

"7.    The Court further finds, based on testimony and charts prepared by [appellants'] expert, Dr. Alley, and testimony of [respondent] Brar that prior to the termination of the lease, and since June of 2006[, appellants] had overcharged and collected rent for inflated CAM charges and share of taxes, and had collected unauthorized accounting,

8.

management, and attorney fees in the combined total amount of $24,751.83 from [respondent] Brar which under [Code of Civil Procedure section] 431.70 and *Construction Protective Services, Inc. v. T.I.G. Specialty Insurance* (2002) 29 Cal.4th 189 fully offsets any rent obligation [respondent] Brar had under the lease.

"8.     The Court specifically finds [appellant] Singh's testimony that [respondent] Brar had underpaid invoices … is not credible and was contradicted by testimony of his son Jatinder Singh who, on cross-examination admitted disputed amounts would be restated in several monthly invoices until reconciled, and finds that [respondent] Brar had not underpaid the invoices.

"9.     The court therefore finds that neither [respondent] Brar nor alleged [respondent] Swartout owes anything under the terminated lease and are entitled to attorney's fees provided for in the lease .…

"Based upon the above findings, Judgment is given in favor of [respondents] Brar and Swartout.  [Appellants] shall take nothing and [respondents] shall have their costs and fees."

## DISCUSSION

### I.     Standards of review

Under the general rules applicable to a trial court's statement of decision, an appellate court reviews the factual findings for substantial evidence.  (*Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 513; see also *In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 49-50 & fn.11 [appellate court reviews entire record as well as statement of decision to determine whether substantial evidence supports trial court's judgment].)  In an earlier decision, we explained the substantial evidence rule:

"""Where findings of fact are challenged on a civil appeal, we are bound by the 'elementary, but often overlooked principle of law, that … the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the findings below.  [Citation.]  We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor in accordance with the standard of review so long adhered to by this court." [Citation.]' [Citations.]  [¶]  Moreover, we defer to the trier of fact on issues of credibility.  [Citation.]  '[N]either conflicts in the evidence nor "'testimony

9.

which is subject to justifiable suspicion … justif[ies] the reversal of a judgment, for it is the exclusive province of the [trier of fact] to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.'" [Citations.]'" (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968; see also *In re Dakota H.* (2005) 132 Cal.App.4th 212, 228 ["We do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts."].)

Substantial evidence is reasonable, credible, of solid value, and of ponderable legal significance. (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633.) A judgment will be upheld if it is supported by substantial evidence, even if substantial evidence to the contrary also exists and the trial court might have rendered a different result had it believed this evidence. (*In re Dakota H.*, *supra*, at p. 228; see also *In re Michael G.* (2012) 203 Cal.App.4th 580, 589 ["The substantial evidence standard of review is generally considered the most difficult standard of review to meet, as it should be, because it is not the function of the reviewing court to determine the facts."].)

"Although a trial court's findings of facts bind a reviewing court if substantial evidence supports those findings, the trial court's legal conclusions are not binding on appeal. [Citation.] Legal questions must be reviewed de novo. [Citation.]" (*PJNR, Inc. v. Department of Real Estate* (1991) 230 Cal.App.3d 1176, 1183; see also *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 ["When the decisive facts are undisputed, we are confronted with a question of law and are not bound by the findings of the trial court."]; *ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266 [appellate courts generally apply independent standard of review to conclusions of law pertaining to construction of a lease].)

10.

## II.    Appellants terminated the 1994 Lease on October 1, 2010[7]

Appellants argue, as a matter of law, that they did not terminate the 1994 Lease by serving the three-day notice and filing a complaint for unlawful detainer.[8] We disagree.

The 1994 Lease afforded the lessor one of two options as the "final," "sole," and "exclusive" remedy in the event of default:  (1) reenter and relet the premises or (2) terminate the lease and resume possession of the premises "wholly discharged" from the lease. (*Ante*, at p. 4.)  After Brar made a partial payment for September 2010, appellants served a three-day notice warning that failure to either pay the outstanding balance or quit the premises would compel them to "elect to declare the forfeiture" of the leasehold and the 1994 Lease.[9] The notice did not indicate that appellants intended to

---

[7]    At the outset, we reject respondents' assertion that the 2008 Addendum terminated the 1994 Lease.  "It must "'clearly appear" that the parties intended to extinguish rather than merely modify the original agreement.' [Citation.]  Where novation is in the form of a substitution of a new debtor for an old one, the release of the old debtor is sufficient to constitute the requisite consideration for the new debtor's promise. [Citations.]  Moreover, to constitute a novation, rather than a mere assignment, in the context of a new debtor, the former debtor must be released of his obligation by consent of the former debtor as well as the creditor. [Citations.]" (*Wells Fargo Bank v. Bank of America* (1995) 32 Cal.App.4th 424, 432.)

Here, the 2008 Addendum was "incorporated in and made a part of" the 1994 Lease and appellants did not expressly release the original lessee. (*Ante*, at p. 5.)  In fact, the 1994 Lease provided that "no such assignment, subletting or transfer shall operate to relieve Lessee of its obligations for the performance of all of the terms and conditions of this Lease, including the payment of the rent." (*Ante*, at p. 4; cf. *Wells Fargo Bank v. Bank of America*, *supra*, 32 Cal.App.4th at p. 432 ["[A] creditor may, in advance in the underlying contract, assent to the substitution of a new debtor and discharge from liability the old debtor, thus causing a novation."].)

[8]    Appellants point out that the court's statement of decision did not parallel its tentative findings.  Tentative findings are "not binding on the trial court and can be modified or changed as the judge sees fit before entry of judgment." (*FLIR Systems, Inc. v. Parrish* (2009) 174 Cal.App.4th 1270, 1284, citing Cal. Rules of Court, rule 3.1590(b).)

[9]    In the three-day notice, appellants stated that they retained their rights as to the collection of rents and damages owed by Brar "under the terms of [his] agreement to

---

11.

relet the property. Brar did not pay the balance within the notice period, resulting in the election of the termination remedy.

Appellants' election of the termination remedy does not end our analysis. An option in a lease to terminate for nonpayment of rent is only a reservation of the right to do so in the manner provided by law. (*Standard Livestock Co. v. Pentz* (1928) 204 Cal. 618, 630; *Igauye v. Howard* (1952) 114 Cal.App.2d 122, 126 (*Igauye*).) To properly exercise this right, the lessor must bring an action for unlawful detainer. (See *Sexton v. Nelson* (1964) 228 Cal.App.2d 248, 256, citing Code Civ. Proc., § 1161, subd. 2; *Igauye*, *supra*, at p. 126, citing Civ. Code, § 791.) "The remedy of unlawful detainer is designed to provide means by which the timely possession of premises which are wrongfully withheld may be secured to the person entitled thereto." (*Knowles v. Robinson* (1963) 60 Cal.2d 620, 625.) "Generally, in order to take advantage of this summary remedy, the landlord must demonstrate strict compliance with the statutory notice requirements contained in [Code of Civil Procedure] section 1161 et seq., including providing the tenant with three days' written notice to pay rent or quit the premises." (*Culver Center Partners East #1, L.P. v. Baja Fresh Westlake Village, Inc.* (2010) 185 Cal.App.4th 744, 749; accord, *WDT-Winchester v. Nilsson* (1994) 27 Cal.App.4th 516, 526 [regarding commercial landlords]; see also *Briggs v. Electronic Memories & Magnetics Corp.* (1975) 53 Cal.App.3d 900, 905 [three-day notice period under Code Civ. Proc., § 1161 is a condition precedent to the filing of a complaint for unlawful detainer].) If the tenant pays within the notice period, the right to possession remains in effect as if there had

through the end of the [25-year] agreement term," but sought forfeiture of the 2008 Addendum only, not the 1994 Lease. In effect, they treated the 2008 Addendum as a second, independent lease. We cannot countenance this proposition. "It is elementary that two valid and enforceable leases cannot be outstanding on the same property for the same term." (*Douglas v. Schindler* (1930) 209 Cal. 616, 620.) As we previously discussed, the 2008 Addendum was "incorporated in and made a part of" the 1994 Lease. (*Ante*, at fn. 7.)

12.

been no default.  (*Briggs v. Electronic Memories & Magnetics Corp.*, *supra*, at p. 905.)

Otherwise, the tenancy is terminated after the expiration of this period.  (*Highland Plastics, Inc. v. Enders* (1980) 109 Cal.App.3d Supp. 1, 7 (*Highland Plastics*); see also *Lamanna v. Vognar* (1993) 17 Cal.App.4th Supp. 4, 7 [tenant has right to pay overdue rent without being subject to termination of tenancy within three-day period under Code Civ. Proc., § 1161].)  An action for unlawful detainer cannot arise until after the tenancy has been terminated.  (*Highland Plastics*, *supra*, at p. 7; *Bauer v. Neuzil* (1944) 66 Cal.App.2d Supp. 1020, 1029.)

Appellants provided the requisite three-day notice and afforded Brar the opportunity to pay the balance or surrender the premises.  Because Brar did neither, the 1994 Lease was terminated on October 1, 2010, after the expiration of the notice period.  (See *Highland Plastics*, *supra*, 109 Cal.App.3d Supp. at p. 7.)[10]  Therefore, appellants properly initiated an unlawful detainer action.  (See *Markham v. Fralick* (1934) 2 Cal.2d 221, 225; *Briggs v. Electronic Memories & Magnetics Corp.*, *supra*, 53 Cal.App.3d at p. 906 [unlawful detainer action inappropriate where premises surrendered before filing of the complaint].)

On appeal, appellants cite *Grand Central Pub. Market v. Kojima* (1936) 11 Cal.App.2d 712 (*Grand Central*) for the proposition that a lease is not terminated until an unlawful detainer judgment is rendered.[11]  In that case, the plaintiff lessor and the

---

[10]  Because we find that the 1994 Lease was terminated on October 1, 2010, appellants' contention that they did not terminate or modify said lease by orally agreeing to accept reduced rent on November 2, 2010, is rendered moot.

To the extent appellants allege that Brar's testimony cannot constitute substantial evidence demonstrating that the parties orally agreed to a month-to-month tenancy, we disagree.  (See *Lenk v. Total-Western, Inc.*, *supra*, 89 Cal.App.4th at p. 968 ["[W]e defer to the trier of fact on issues of credibility."]; *In re Dakota*, *supra*, 132 Cal.App.4th at p. 228 ["We do not … evaluate the credibility of witnesses …."].)

[11]  Appellants also cite *Igauye*, *supra*, 114 Cal.App.2d 122, as supporting authority.  That case, however, is inapposite.  In *Igauye*, the appellate court simply held that a

defendant lessee entered into three separate agreements for certain stalls in the Grand Central Market in Los Angeles, California.  In December 1932, the lessor twice served a three-day notice to pay rent or quit.  The lessee did neither on both occasions.  On January 6, 1933, the lessor sued to recover rent for the month of January, but did not request forfeiture of the leases or the lessee's removal.  On January 7, 1933, the lessee vacated the premises.  He subsequently contended that the lessor was not entitled to rent for the month of January because the leases were terminated when he quit.  (*Id.* at pp. 714-716.)  The trial court ruled in favor of the lessor and the appellate court affirmed the judgment on appeal and rehearing.  (*Id.* at pp. 713-714, 717, 718.)  With regard to the lessee's argument, the appellate court explained:

> "'The lease is terminated only if the notice is acted upon by one of the parties.  If the lessor had brought an unlawful detainer suit based upon the notices to quit, as they were framed in this case, then the court trying such unlawful detainer action would, upon a proper showing, have the undoubted right to decree a forfeiture of the lease.  [Citations.]  Or, if the lessee within the three-day period specified in the notices had quit the premises, the respective lease would have been forfeited by agreement of the parties, since the lessee would be in the position of accepting lessor's offer to terminate the same.  [Citations.]  Neither of these methods was followed or taken advantage of by either of the parties.'"  (*Id.* at p. 717.)

To the extent *Grand Central* can be read to suggest that a lease somehow remains intact until an unlawful detainer judgment is rendered, we disagree.  A landlord may only commence an action for unlawful detainer against a tenant who wrongfully withholds possession of demised property.  Conversely, a landlord may not evict a tenant who has permission to occupy said property.  Thus, termination of the basis of possession, such as

provision of a lease conferring a right of reentry on lessor "[does] not *ipso facto* work a forfeiture of the leasehold for the failure of the lessee to pay rent, but only [gives] the lessor the right at his option to terminate, which … 'amounts to no more than the right on the part of the landlord to terminate the lease in the manner provided by law ….'"  (*Id.* at p. 126.)

14.

a lease, is an essential prerequisite for an unlawful detainer action. (See *Highland Plastics*, *supra*, 109 Cal.App.3d Supp. at p. 7.)

**III.     Brar does not owe damages under the 1994 Lease**

Appellants argue that they are entitled to damages under the 1994 Lease for the period of September 2010 to September 2011. We disagree.

Brar defaulted in his September 2010 rent payment when he paid only $10,000. His failure to pay the balance or surrender the property led to the termination of the 1994 Lease on October 1, 2010. Brar remained in possession of the premises through October 2010. However, on November 2, 2010, appellants and Brar orally agreed to a new month-to-month tenancy. Thus, appellants may only claim damages under the 1994 Lease for September 2010 and October 2010.

Appellants maintain that Brar owes $16,584.70 in unpaid rent and other charges for September 2010 and October 2010. Assuming arguendo that appellants accurately calculated the amount, the $16,584.70 debt is more than satisfied by the undisputed $24,751.83 overcharge. Therefore, Brar does not owe damages under the 1994 Lease.[12]

---

[12]     Because appellants are not entitled to any damages, their contentions that Swartout, Inc. and Swartout are liable for said damages are rendered moot.

15.

## **DISPOSITION**

The judgment of the superior court is affirmed.  Costs on appeal are awarded to respondents.

_____
Kane, Acting P.J.

WE CONCUR:


_____
Poochigian , J.


_____
LaPorte, J.[*]

---

[*]     Judge of the Kings Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16.